## STOUT LUMBER COMPANY *v.* WRAY.

### Opinion delivered July 7, 1913.

1. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—Appellee was employed as assistant inspector in appellant's mill, his duty being to inspect the machinery at the noon hour. In the forenoon he was called to perform the duties of an absent employee, and was injured by reason of the removal by another employee of a plank protecting the machinery at which appellee was called to work. *Held,* although appellee was an inspector, but was injured when called to perform other duties in the mill, the appellant is not entitled to a peremptory instruction in its favor, but the question of the contributory negligence of the appellee was, under the circumstances, a question for the jury. (Page 295.)

2. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—Where appellee is employed as an inspector in appellant's mill and his duty requires him to inspect the machinery only at stated intervals, when he is called upon to perform the duties of another servant, at a time other than the time for the inspection, if he is injured by a defect in the covering of the machinery, due to negligence of another servant, he does not assume the risk created at the time of the injury by the negligence of the appellant, its agents or servants of which he did not know. (Page 296.)

Appeal from Calhoun Circuit Court; *George W. Hays,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee sued appellant to recover damages for personal injuries received by him while in its employment. Appellant owned and operated a sawmill at Thornton, Arkansas, and appellee worked for it in the capacity of assistant or helper to its foreman. Appellee was injured on the 17th day of February, 1912, and was at the time fifty-four years old. He had been in the employment of appellant for about twenty years and had been assistant to the foreman for about ten years prior to the time he

received his injuries. The accident occurred about 7 o'clock in the morning, and, it being cloudy and dark, the electric lights in the mill were burning. The circumstances attending the injury are as follows:

Logs were brought up from a pond and thrown on a log deck. They were then placed on the saw carriage and slabs were cut off of them by the sawyer. Then the logs and slabs together were kicked off on a live roller and carried down them to a point opposite the skidway, where the slabs would be kicked off on one side and the logs would be sent down the skidway. The slabs would then be placed on another live roller and carried off on it. The live rollers ran in a table and the cog wheels extended above and below the surface of the table and were the driving gear of the moving rollers. A plank one inch thick and eight or ten inches wide and four feet long was nailed to the table just under it to protect the man who placed the slabs on the live roller from injury by coming in contact with the cog wheels while at work. On the morning the injury occurred, the man who usually worked at this live roller table did not come and appellee in order that the sawing might not be stopped, went up to take his place until a substitute could be procured. When appellee got there he found that several slabs had been kicked off and piled up around the table. Some of them were leaning against the top of it. He began at once to pick up the slabs and place them on the live rollers to be carried away. The last one he put on was pretty heavy and he had to lean over the table to place it on the rollers. While he was leaning over the cog wheels or cog gearing caught in his pants and dragged his leg into it. He was severely injured, but, inasmuch as no question is made as to the verdict being excessive, it is not necessary to abstract the testimony showing the extent and character of his injuries.

About 5 o'clock in the evening on the day before appellee was injured, Ed Moore, who usually performed the work of placing the slabs on the live rollers, prized off the plank which had been nailed on to the table to

protect the workmen from the cog wheels and gearing. Clyde Mullins, who was an assistant inspector of the mill, was present when the plank was torn off and did not replace it or report to the foreman the fact of it being off.

James Cargyle was the foreman and appellee, S. R. Wray, was his assistant. Tom Hollingsworth and Clyde Mullins also assisted him in the work of inspecting the machinery of the mill. These four men inspected the entire machinery of the mill. It was their custom to inspect the machinery on the second floor, on which appellee was injured, during the noon hour, when the machinery was idle. Appellee testified that they inspected the machinery on this floor at noon on the day before he was injured and that the plank which protected the workman from the live gearing by which he was injured was securely nailed on to the live roller table when such inspection was made. Appellee said that during the rest of the day he worked downstairs in the machinery which ran the mill, except when he was called upstairs by signal or sent by the foreman. That his work was all downstairs throughout the day except at the noon hour, when the inspection of the machinery upstairs, where he was injured, was made. He stated that on the morning he was injured the foreman met him at the foot of the stairs and directed him to go up and take Ed Moore's place until he could get a substitute. He immediately went up and began to work placing the slabs on the live rollers until the injury occurred as above stated.

Clyde Mullins testified: I had been at work in the mill of appellant company for nearly two years when appellee was injured. I helped in the work of inspection during the noon hour when we looked over the machinery to see if there was anything which needed repairing. When we discovered any defects it was our duty to fix them. If I discovered a defect and could not fix it myself, it was my duty to report it to the foreman. I was present when Ed Moore pried off the plank which was nailed over the gearing. He did this about 5 o'clock

in the evening before appellee was injured on the next morning. I was called away about some matter and forgot all about the plank being pried off the roller casting. I forgot all about it and did not fix it myself or report it to the foreman. Appellee admitted that on three or four other occasions it had become necessary to pry off this plank and that he had nailed it back himself or caused it to be done. He said that on the morning of the injury he went to work in a hurry and did not make any special examination to see if the plank was in its place; that he had inspected it the day before at noon and that it was in its place; that the slabs were piled around the table in such a manner that he did not notice or discover that the plank was off until after the injury had occurred.

The foreman, Cargyle, testified for the appellant, and denied that he directed appellee to go up and take the place of Ed Moore in placing the slabs on the live rollers. He said it was the duty of appellee to help him look after the mill and take care of all the machinery and keep everything in repair; that it was his duty while going over the mill to look after things and repair such machinery as needed repairing. Other testimony will be referred to in the opinion.

The jury returned a verdict for appellee and the case is here on appeal.

*T. D. Wynne, H. T. Harrison* and *Gaughan & Sifford,* for appellant.

1. The appellant's request for a peremptory instruction should have been given, because the evidence shows that appellee, as assistant foreman and operative millwright, was charged with the express duties of inspecting and repairing the place at which he was injured, one of the principal functions of his employment being, as appears by the evidence, to inspect the machinery and to repair defects wherever found. 26 Cyc. 1252-4; 20 Am. & Eng. Enc. of L. 142; 98 Ark. 38; 93 Ark. 152; 88 Ark. 292.

2. There is no proof of negligence on the part of appellant. Negligence will not be imputed to it because of the act of one of the laborers in knocking off the plank which covered the cog gear. The act of 1907 (Castle's Supp., § 5230a), does not operate to relieve the employee of the duty to exercise ordinary care for his own safety, and contributory negligence is still a valid defense. 93 Ark. 484; 98 Ark. 522.

3. It is error to instruct the jury on issues not raised by the pleadings and of which there is no proof. Such instructions are abstract, misleading and, therefore, prejudicial. 74 Ark. 22; 88 Ark. 25.

4. If, as is clearly demonstrated by the proof, it was appellee's duty to inspect and repair the place where the accident occurred, he can not be heard to complain of appellant for injuries received in consequence of his own omission of duty, whether the exposed condition of the cog gear was created by a fellow-servant or some other agency. The court's charge with reference to the assumption of risk was wrong. 93 Ark. 15; 88 Ark. 292; 93 Ark. 489; 56 Ark. 391.

*Davis & Pace,* for appellee.

1. Appellant was negligent, and appellee was entitled to recover. Since the act of March 8, 1907, corporations are liable for injuries to their servants resulting from the negligence of other servants, regardless of the grade of service. 92 Ark. 503; 87 Ark. 587; 89 Ark. 522; 102 Ark. 562; 102 Ark. 625.

After being properly instructed by the court the jury found that Ed Moore, a fellow-servant, was negligent in leaving the cog gearing exposed, and this negligence was the proximate cause of the injury. 104 Ark. 59; *Id.* 105; 97 Ark. 584. Appellant is also liable because of the negligence of Clyde Mullins, one of its inspectors, whose duty it was to repair or report defective places, who saw the plank torn from its fastenings and failed to repair or report it for repairs.

2. The evidence does not sustain the claim of appellant that appellee was not in the exercise of due care, but was guilty of contributory negligence. The jury's verdict settles the point that he could not, in the exercise of ordinary care, have seen that the plank was off and the cogs exposed. Their verdict will not be disturbed if there is any substantial evidence to support it. 102 Ark. 625; 91 Ark. 86; 91 Ark. 388; 89 Ark. 522.

3. There is no error in the instructions given.

HART, J., (after stating the facts). It is first earnestly insisted by counsel for appellant that the court erred in not directing a verdict in its favor. Under the act of March 8, 1907, all corporations are made liable for injuries to their servants resulting from the negligence of other servants, regardless of the grade of service. *Soard* v. *Western Anthracite Coal & Mining Co.,* 92 Ark. 502; *Aluminum Company of North America* v. *Ramsey,* 89 Ark. 522; *St. Louis Southwestern Ry. Co.* v. *Burdg,* 93 Ark. 88.

It is well settled that the rule which imposes upon the master the duty to exercise ordinary care to provide his servant with a reasonably safe place in which to work requires the master to make reasonable inspection to see that the place of work and appliances are safe. *St. Louis, I. M. & S. R. Co.* v. *Holmes,* 88 Ark. 181. This is conceded to be the law by counsel for appellant, but they contend that under the facts as disclosed by the record the master delegated to appellee the duty to inspect its machinery and appliances and to make them safe or to report their unsafe condition to the foreman and that, therefore, the case falls within the principles of law decided in the case of *Southern Anthracite Coal Company* v. *Bowen,* 93 Ark. 140, and other cases of like character. Under the rule contended for, if it was the duty of appellee to have inspected the appliance at which he was working when he received his injuries before he went to work there, then he ought not to recover; for in that event the injury was the result of his own negligence because he admits that he did not inspect the appliance for de-

fects at the time he went to work there. We do not think the evidence as disclosed by the record bears out their contention. It is true that a part of the duties of appellee was to assist in inspecting the machinery and appliances of appellant. The mill plant of appellee had two floors and appellant was injured while working on the upper floor. The testimony shows that it was the custom of the foreman to have an inspection made of the machinery on the floor on which appellee was hurt, every day at the noon hour. The machinery was then idle and the foreman, together with appellee and two others, at that hour made an inspection of all the machinery and appliances used by appellant in operating its mill. Appellee states that such inspection was made at the noon hour on the day preceding the accident and that the plank which was nailed to the table on which ran the moving rollers was in its place and that the cog wheels which ran the moving rollers were not exposed. He says that during the rest of the day his duties kept him on the first floor of the mill and that it was not necessary for him to go on the second floor unless he was called there by signal or directed by the foreman to go there for the purpose of making repairs or doing such other work as he was required to perform. He says that he did not go on the second floor during the afternoon after the inspection just referred to had been made and that he went up there to work early in the morning at the command of his foreman. That the slabs were piled around the table in such a way as to conceal the fact that the plank had been removed and left the cog wheel exposed and that he did not notice this fact until after he was injured.

Other evidence shows that the plank was pried off about 5 o'clock in the afternoon before and that Mullins, whose duty it was to repair any defects that he might discover in the machinery or to report them to the foreman, was present and knew that the plank had been pulled off. The evidence shows that it was dangerous to work at the table where the live rollers were without

the cog wheels and gearing being guarded and that they were kept from being exposed by a plank four feet long, one inch thick and eight inches wide. Therefore, the jury might reasonably infer that the act of Mullins in not restoring the plank to its position or in reporting the fact of its being off to the foreman, was an act of negligence which would render appellant liable for any injuries caused thereby. Appellee according to his testimony was acting as a substitute for another servant at the time he was injured and was not acting in his capacity of inspector. He said that he was not required to inspect the appliances before using them when he took the place of another servant. He said that he went up there hurriedly that morning and began to place the accumulated slabs on the live rollers in order that they might be cleared out of the way so it would not become necessary to stop the machinery. That the slabs were so piled around the table that they concealed the fact that the plank had been removed and left the cog wheels exposed. Under these circumstances, we think that the contributory negligence of appellee was a question for the jury.

Counsel for appellant next insist that the court erred in giving the following instruction:

"In this case, if the injury was the result of any risk or hazard ordinarily or usually incident to the plaintiff's employment at the mill, he assumed that risk, and can not recover; but he does not assume the risk created at the time of the injury by the negligence of the defendant, its agents or servants, of which he did not know; and if his injury was the result of said negligence of the agents or servants of the defendant, then he did not assume such risk."

They contend that the instruction ignores the contention of appellant, as it was appellee's duty to discover and remedy any defect that existed in the appliances about appellant's sawmill before he began to work around the same. We do not think that it was proved that such was his duty. As we have already

seen, appellee stated that he was required only to inspect the machinery and appliances on the floor on which he was hurt at stated intervals, and testified in effect that when he was substituted for another servant he was not required to inspect the machinery or appliances before going to work at them. It is true the foreman testified that appellant's duty carried him all over the mill plant and that it was his duty, if he knew of any defect in the machinery or appliances, to repair it himself or to report the fact to the foreman. His testimony, however, does not go to the extent of showing that it was the duty of appellant to make an inspection of the machinery and appliances before he went to work at them when he was substituted for another servant. The undisputed testimony shows that the inspection of the machinery was made at regular and stated intervals and at other times appellee was employed in the work of making repairs and performing such other duties as were assigned to him by the foreman. The fact that it was his duty to repair any defect that he might discover in the course of performing his duties does not show that he would be required to inspect machinery before going to work at it as a substitute for another workman. In this view of the case it does not make any difference whether he went to work at the place where he was injured by the direction of the foreman or in the discharge of his usual and ordinary duties. We think that the undisputed testimony shows that it was not his duty to have made an inspection of the machinery where he was injured before he went to work at it in place of another servant, and that there was no error in giving the instruction.

Other assignments of error in regard to instructions given and those refused are raised by appellant's counsel in their brief and argument. We have not overlooked them, but think they are sufficiently covered by the principles of law which we have announced. We have considered the instructions given and those refused and think that the issues raised by the pleadings and the evidence were fairly covered by the instructions given, and the judgment will be affirmed.