Royal China, Inc., Respondent, *v.* Regal China Corporation, Appellant.

First Department, March 11, 1952.

*Isidor J. Kresel* of counsel (*Harold I. Meyerson* and *Irving L. Weinberger* with him on the brief; *Kresel & Meyerson,* attorneys), for appellant.

*Jonas J. Shapiro* of counsel (*Janet Perlman* with him on the brief; *Jonas J. Shapiro,* attorney), for respondent.

COHN, J. Plaintiff is a corporation organized under the laws of the State of Ohio. Defendant is a New York corporation, which according to the complaint, does no business in the State of Ohio nor do any of its officers, directors or agents reside in that State. It owns 16,020 shares or 23% of the 70,000 outstanding shares of stock of plaintiff corporation.

The action is equitable, and the complaint demands judgment against defendant (1) permanently enjoining defendant from transferring or dealing in the shares of stock it owns in plaintiff corporation except only to surrender these certificates to plaintiff for exchange for new certificates bearing legends relating to plaintiff's pre-emptive rights therein and lien rights thereon (2) ordering defendant to surrender to plaintiff its certificates of stock for exchange for new certificates bearing legends relating to plaintiff's pre-emptive rights and lien rights. At the Special Term plaintiff on motion was granted an injunction *pendente lite* restraining defendant from transferring or selling its stock except only to surrender the certificates to plaintiff for exchange for new certificates bearing the legends above described. Defendant made a cross motion to dismiss the complaint for insufficiency which was denied. From those two orders this appeal has been taken.

Plaintiff's demand, as set forth in its complaint, for a mandatory injunction restraining defendant from selling or assigning its stock in its present form and compelling defendant to surrender its shares to plaintiff for exchange is based upon corporate action taken by plaintiff in the State of Ohio in June, 1951, which effected amendments to its charter and by-laws. By this means plaintiff corporation, as to all outstanding shares of stock, undertook: (1) to create in the corporation an option right requiring a stockholder to offer his shares to the corporation before he might sell them to some third party; (2) to create in the corporation lien rights affecting a stockholder's shares; and (3) to require all stockholders to turn in their shares in

exchange for new certificates bearing restrictive legends setting forth the newly created option and lien rights of the corporation.

Amendments to its charter and by-laws were adopted by filing in the office of the Secretary of State of Ohio a written instrument signed by the holders of more than a majority of the shares without notice of the contemplated action to defendant until after such action had been completed. Defendant was thereafter directed to turn in its shares for exchange, but failed to comply. Plaintiff pleads that there is danger that defendant will transfer its shares without surrendering them for exchange, and that plaintiff will thereby be deprived of its newly created option and its newly created lien rights.

Though plaintiff is a foreign corporation it has invoked the jurisdiction of the New York courts because, as it contends, it cannot obtain jurisdiction of defendant corporation in its own State.

Plaintiff asserts that neither of the first two by-laws, which were adopted by the corporation, is sought to be enforced in this action, and that questions of their validity and enforcibility may not be considered here; it urges that by this equitable action it seeks only to enforce the third by-law and resolution of the board of directors adopted pursuant thereto which requires defendant to surrender its stock certificates for exchange; that because the certificates, as presently worded, do not give notice of the newly created rights any transferee would take them free of plaintiff's rights under the Ohio law; and that it is entitled to the permanent relief sought in the complaint and to the temporary injunctive relief granted by the court.

Defendant's main contentions are that: (1) the amended by-laws, enforcement of which plaintiff is seeking, are invalid because they create an unlawful restriction on alienation of the shares of stock; (2) the amendments to the certificate and to the by-laws giving birth to the pre-emptive rights and lien rights are ineffective as to issued shares, cannot bind a non-assenting stockholder and that an injunction in aid of the enforcement of these invalid amendments may not be granted; (3) that the Ohio statute authorizing plaintiff corporation to call in outstanding shares for cancellation and exchange provides its own exclusive remedy in the event a stockholder fails to comply with the resolution requiring a surrender of the certificates; and (4) that, in any event, the Special Term should have declined jurisdiction of the action because it involves management of the internal affairs of a foreign corporation.

(1) As to the claim that the amended by-laws are invalid because they create an unlawful restriction on alienation of the stock. An option agreement requiring a stockholder to offer his shares to a corporation before he can sell them to a third party if not unreasonable and oppressive is valid, but where the prohibition against the transfer of the stock is unreasonable and is such as to render the stock unmarketable, such restriction has been held invalid as against public policy. (138 A. L. R. 647; 2 A. L. R. 2d 745; *Nicholson* v. *Franklin Brewing Co.,* 82 Ohio St. 94; *Brown* v. *Britton,* 41 App. Div. 57, 64.) In the complaint there is set forth that portion of the by-law giving plaintiff corporation an option right for thirty days to buy at the fair cash value thereof the stock of a shareholder who desires to sell. No such option existed when defendant became the owner of its shares, and defendant now urges that the complicated procedure outlined in the entire by-law, which is concededly correctly set forth by defendant, requires that the stock be first offered to the corporation for sale and that if the stockholder refuses the price offered by the corporation the shares are nevertheless transferred on the books of the corporation and the corporation becomes the owner. The stockholder according to defendant, either takes the price offered by the corporation or he forfeits his ownership of the shares and he is left a law suit whenever the president of the plaintiff corporation finds it practicable and reasonable to commence such action in the Ohio courts. Defendant claims that the practical effect of this by-law is to impose an absolute restriction and render the stock unmarketable. We do not find it necessary to pass upon the merits of defendant's claim in this regard.

The amended by-law creating lien rights, as set forth in paragraph " Seventh " of the complaint, defendant contends, also creates an unreasonable restriction on alienation. The by-law provides:

" The Corporation shall have a first and paramount lien upon all shares standing of record in the name of any shareholders and upon all dividends declared thereon after the effective date of this Amendment which shall be the twelfth day of June, 1951, for the debts, liabilities, contracts or engagements owing to or in favor of the Corporation by or against the shareholder in whose name said shares so appear of record.

" Said lien shall apply regardless of whether the shares are held by such shareholder solely or jointly with others; regardless of whether the shareholder holds for others whose names are not disclosed upon the records of the Corporation; regard-

less of whether the shareholder is primarily or secondarily liable or whether he is liable solely or jointly with others; regardless of whether the said obligation is for a fixed amount or for an unascertained amount; and regardless of whether the time for payment, discharge, or fulfillment of the shareholder's debts, liabilities, contracts or engagements shall have arrived.''

We quite agree with defendant's contention that to burden shares of stock with a lien so all embracing, and including as it does a lien of an unascertained amount, regardless of whether the time for payment has arrived, would result in making the stock unsalable and unalienable; that such provision has no legitimate corporate purpose; and at least in New York State would be invalid.

(2) As to the contention that the amendments to the certificate and to the by-laws creating the pre-emptive and lien rights are ineffective as to issued shares and as to plaintiff's claim for injunctive relief.

While it is clear the Ohio statute gives a corporation power to provide a right to pre-emption in itself to purchase stock from a stockholder insofar as newly issued shares are concerned when and if such right is reasonably employed, it is by no means clear that the statute authorizes the corporation to exercise such power retroactively and thus attempt to bind issued shares in the hands of a stockholder who does not consent to such an amendment to the charter.

As to lien rights there appears to be no basis whatever in the Ohio statutes to impose upon newly issued shares lien rights such as those proposed in the amendments to the certificates and to the by-laws.

'' A stock certificate forms a contract between the holder and the corporation, and nothing can be done to impair its obligation ''. (*Johnson* v. *Lamprecht,* 133 Ohio St. 567, 573; *Geiger* v. *American Seeding Machine Co.,* 124 Ohio St. 222; *Williams* v. *National Pump Corp.,* 46 Ohio App. 427; *Cowles* v. *Cowles Realty Co.,* 201 App. Div. 460, 464; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159.)

A corporation may, in its original charter, include among its terms options and lien rights in its own favor. It may amend its charter to include such rights, if they are not contained in the original charter, but such amendments are not binding upon stock already issued unless there is express and specific statutory authority to make the desired changes in issued shares (*Davison* v. *Parke, Austin & Lipscomb, Inc.,* 285 N. Y. 500, 509). Analysis of the pertinent sections of the Ohio

General Code would be required to determine whether there is such statutory authority and, therefore, whether the amendments to the charter and the by-laws are binding upon issued shares which, of course, include the shares belonging to defendant.

In *Breslav* v. *New York & Queens Elec. Light & Power Co.* (249 App. Div. 181, affd. 273 N. Y. 593) it was said at page 189: '' Even if the proposed amendment be authorized by the statute and declared to be a valid exercise of the reserved power, it is at least doubtful, if the allegations of the complaint be true, that she will be denied relief. There is eminent authority to the effect that all changes in corporate charters made under the reserved power must be reasonable, and not arbitrary, and made in good faith. (*Shields* v. *Ohio,* 95 U. S. 319; *Phillips Petroleum Co.* v. *Jenkins, supra* [297 U. S. 629]. See, also, *Gamble* v. *Queens County Water Co.,* 123 N. Y. 91, and *Matter of Mount Sinai Hospital, supra* [250 N. Y. 103].) ''

We are persuaded that there is grave doubt as to whether the proposed amendments will be upheld as valid by the Ohio courts. In the circumstances, the right of plaintiff to obtain a mandatory injunction here requiring defendant to surrender its stock for exchange for other certificates containing legends with these option and lien rights recorded therein, is open to serious question.

(3) The statute authorizing the corporation to recall outstanding shares of stock for cancellation and exchange (Ohio General Code, § 8623–30, subd. 5) is an enforcement statute. It authorizes a corporation to call in shares for cancellation and exchange for a legitimate purpose and one that is authorized by law. However, as already indicated, there is here much doubt as to whether the purpose of such exchange is lawful. Moreover, the Ohio statute itself provides a remedy in the event that a stockholder refuses to comply with an order for the surrender of certificates for the purpose of exchange. It states: '' Such order may provide that, until compliance therewith, any or all rights as a shareholder of the holder of any certificate so required to be surrendered shall be suspended with respect to the shares represented thereby.''

Thus the Ohio Legislature has granted plaintiff more than adequate power to enforce compliance by an unwilling stockholder. Even were we to assume that the purpose of the exchange be lawful, the right to a mandatory injunction in these circumstances in this State, we think, is unauthorized and unnecessary.

(4) As to the discretionary power of Special Term to exercise jurisdiction in this controversy. Since the attempted creation in the State of Ohio of pre-emptive rights and lien rights in favor of plaintiff corporation is of such doubtful validity, there should be no entertainment of jurisdiction by our courts in a case such as this involving regulation and management of the internal affairs of a corporation dependent upon the laws of a foreign State.

It is now well established that courts of this State are reluctant to interfere by injunction in controversies which touch the internal management of foreign corporations. (*Powell* v. *United Assn. of Plumbers and Steamfitters,* 240 N. Y. 616; *Sauerbrunn* v. *Hartford Life Ins. Co.,* 220 N. Y. 363; *Travis* v. *Knox Terpezone Co.,* 215 N. Y. 259, 263.) Considerations of convenience, efficiency and justice point to the courts of the domicile of the corporation for the settlement of the issues here presented. (*Sternfeld* v. *Toxaway Tanning Co.,* 290 N. Y. 294, 297.)

In *Langfelder* v. *Universal Laboratories* (293 N. Y. 200, 204) the Court of Appeals stated the apposite rule as follows: " But it is well settled that jurisdiction in any case will be declined either in the absence of jurisdiction in the strict sense or where a determination of the rights of litigants involves regulation and management of the internal affairs of the corporation dependent upon the laws of the foreign State or where the court in which jurisdiction is sought is unable to enforce a decree if made or where the relief sought may be more appropriately adjudicated in the courts of the State or country to which the corporation owes its existence (Fletcher, Cyclopedia of the Law of Private Corporations, vol. 17, §§ 8426–8429; *Bickart* v. *Kelly-Springfield Tire Co.,* 243 App. Div. 72; *Travis* v. *Knox Terpezone Co.,* 215 N. Y. 259; *Cohn* v. *Mishkoff Costello Co.,* 256 N. Y. 102; *Sternfeld* v. *Toxaway Tanning Co.,* 290 N. Y. 294; *Nothiger* v. *Corroon & Reynolds Corp.,* 293 N. Y. 682; *Cohen* v. *American Window Glass Co.,* 126 F. 2d 111)."

In this case the problems are fraught with uncertainty; they require the construction and analysis of the statutes and decisions of a foreign State; and they involve the regulation and management of the internal affairs of a foreign corporation which might more appropriately be determined in the courts of that State, to which the corporation owes its existence. In our view, the Special Term in the exercise of its discretion should have declined jurisdiction.

For the foregoing reasons, the order denying defendant's motion to dismiss the complaint should be reversed, with $20 costs and disbursements to appellant and the motion granted, and judgment directed to be entered herein dismissing the complaint with costs; and the order granting plaintiff's motion for an injunction *pendente lite* should be reversed, the motion denied and the temporary injunction vacated.

Dore, J. P., Callahan, Van Voorhis and Shientag, JJ., concur.

Order denying defendant's motion to dismiss the complaint unanimously reversed, with $20 costs and disbursements to the appellant and the motion granted, and judgment is directed to be entered dismissing the complaint herein, with costs. Order granting plaintiff's motion for an injunction *pendente lite* unanimously reversed, the motion denied and the temporary injunction vacated. Settle order on notice. [See *post,* pp. 986, 987.]