Walter R. Hart, J.
The complaint in this action brought by a holder of 100 shares of common stock of the Glen Alden Corporation against that corporation, List Industries Corporation and the officers and directors of both corporations, alleges: The action is brought in a representative capacity as a class action on behalf of all of the stockholders of the corporation. Glen Alden is a Pennsylvania corporation doing business in the State of New York. Its stock is traded on the American Stock Exchange. List Industries is a Delaware corporation whose shares are traded on the New York Stock Exchange. Glen Alden has issued and outstanding 1,748,633 shares of common stock with full voting rights, whereas List has 4,373,844 shares of issued common. There are nine directors of Glen Alden, three of whom are also directors of List. The board of directors of each corporation has voted that Glen Alden acquire the assets and assume the liabilities of List Industries by the issuance of unissued stock on the basis of five shares of Glen Alden for each six shares of List; to combine both corporations under a single board of 17 directors and to adopt the name of List Alden Corporation. Each of the corporations caused to be issued to its respective stockholders a notice of meeting accompanied by proxy statements so as to arrange for the approval of the reorganization. The complaint charges that the proposals contained in the reorganization agreement are part of a conspiracy of the defendants to hand over the assets and property of Glen Alden to List Industries and to defraud the stockholders of Glen Alden of their rights; that the conspiracy took the following form :
(1) In October, 1957 Gera Corporation, a subsidiary of List Industries, acquired approximately 38.5% of Glen Alden’s issued stock for $8,719,109 as a result of a general offer to stockholders to purchase their shares at $12.50 a share. By letter dated October 1, 1957 the president of Glen Alden (who is also a director) urged the stockholders to sell their stock to List Industries, stating “ The offer was made by subsidiaries of List Industries with the knowledge of your directors * * *. Your management feels that it is desirable to have a company with the reputation and financial strength of List Industries associated with us.” (2) Thereupon three members of the board of directors of List were appointed directors of Glen Alden by prearrangement. One of these is Albert A. List, chairman of the board and president of List Industries.
*1092 It is charged that the plan of reorganization which provides that five shares of Glen Alden stock issue for six shares of List, will cause the present stockholders of Glen Alden to lose control of the voting power of their own corporation and place the individual defendants in sole and absolute control of the property and assets of Glen Alden and will personally enrich the defendants, particularly Albert A. List.
At this point is may be observed that by the arrangement the stockholders of Glen Alden will in fact lose control since there are. outstanding only 1,748,633 shares of Glen Alden stock, whereas List has issued 4,373,844. As a result, the List stockholders will own over 3,600,000 shares of the proposed new corporation out of a total slightly in excess of 5,300,000 shares of the proposed consolidated corporation. Consequently, the present Glen Alden stockholders will be reduced to a 23.5% minority of the proposed new corporation.
The complaint further alleges that Glen Alden has a consolidated net operating loss carry-over of approximately $14,000,-000 (of which $3,192,000 may be a capital loss carry-over) available for Federal income tax purposes against its income for the years 1958 through 1962, and asserts that if the proposed reorganization is effectuated the stockholders of Glen Alden, who will be a 23.5% minority, will lose 76.5% of the beneficial interest in the tax loss carry-over.
Plaintiff also alleges that percentagewise stockholders not under the domination of List Industries will be further reduced by the circumstances that that corporation, through its subsidiary Gera Corporation, now owns 673,473 of the issued stock of Glen Alden; that at the time of its acquisition of this stock for $8,719,109 Gera Corporation issued notes in the sum of $5,000,000 to finance the purchase of the stock. It is asserted that since the proposed agreement provides that Glen Alden assume the liabilities of List, it is in effect purchasing its own stock, which it may not do except out of surplus; that it is doing indirectly what it may not do directly. In support of the contention that this arrangement is illegal, plaintiff adverts in its complaint to subdivision 5 of section 664 of the Penal Law, which provides that a direct or indirect violation of this principle of law is a misdemeanor. The issue as to whether this provision is applicable to a foreign corporation is moot since an examination of the complaint fails to disclose any allegation that Glen Alden does not have a surplus. On the contrary, the proxy statements of Glen Alden and List Industries, prepared by the management of each company, on page 31 thereof, show that Glen Alden has a capital surplus of $65,223,- *1093 726 and an earned surplus of $2,261,691, totaling $67,485,417, less treasury stock carried at $1,259,107, leaving a surplus of $66,226,310; so there would be no bar for the purchase by Glen Alden of its own stock. It is important to note, however, that the proxy statements show that the book value net worth of Glen Alden and its subsidiaries, as reflected by its capital and surplus, amounts to $68,070,997, while List Industries and its subsidiaries have a capital and surplus, according to its books, of only $33,149,267.
The complaint further alleges that the proposed reorganization was devised in bad faith to promote the interests of the defendants and not for the benefit of Glen Alden and its stockholders who have been damaged by the fraudulent scheme and conspiracy; that the reasons given by the officers and directors of Glen Alden, that the reorganization would result in further diversification of enterprises to the benefit of its stockholders, are sham and designed to conceal the true purpose of the plan (of enriching List Industries and its stockholders at their expense); that the solicitation of proxies failed to disclose the true motives on the part of the defendants or the harmful effect on the interests of the stockholders of Glen Alden that an affirmative vote on the plan would result in; that the effectuation of the plan would cause irreparable damage to the stockholders of Glen Alden. The complaint then alleges that the acts contemplated by the reorganization agreement are not within the powers conferred upon the corporate defendants, are illegal and void since they compel the stockholders of Glen Alden to ask for an appraisal although they have been advised by the defendants in the proxy statements that in the opinion of counsel dissenters have no rights of appraisal.
The complaint alleges that plaintiff has no adequate remedy at law and also contains the following allegations9. No demand has been made upon the defendant, glen alden, to bring and prosecute this action, as no demand is necessary, for this is a representative suit, not a derivative one. Were a demand necessary, it would have been futile to make it, for, the directors and officers of glen alden named as defendants are in control of its corporate affairs, and are participants in the wrongs complained of, and are in the strategic position to prevent the suit from being brought. It could not be expected that they would sue themselves for the wrongful transactions they unanimously have approved, recommended and executed.”
In the prayer for relief plaintiff asks for damages for himself and all the stockholders similarly situated, estimated at $30,000,000 or, alternatively, inter alia, for an injunction restrain *1094 iug the consummation of the transactions, terms and conditions of the reorganization agreement and for the appointment of a receiver.
Plaintiff has moved this court for an injunction pendente lite and for the appointment of a receiver. Defendant List Industries has cross-moved to dismiss the complaint on two grounds: (1) for insufficiency under rule 106 of the Buies of Civil Practice and (2) on the ground of forum non conveniens, viz., that the court should decline jurisdiction in this action since it involves the internal affairs of two foreign corporations. Defendant Glen Alden (by stipulation with the plaintiff) has joined in the latter motion only. Defendant List Industries also moved under section 61-b of the General Corporation Law to require plaintiff to file security but this motion was withdrawn. Orderly procedure requires that defendants’ motions must first be disposed of since rulings thereon adverse to plaintiff would render his applications academic.
Defendant List, in support of its application to dismiss under rule 106 of the Buies of Civil Practice, states that it “ will not urge the point that the complaint is based solely and entirely on conclusions and does not state facts ’ ’ other than those of the proxy statements which are made part of the complaint. It bottoms its motion on the sole ground that plaintiff has no action in his individual capacity. In other words, it is contended that the cause of action is derivative in the right of the corporation rather than in the right of the stockholders. While in the opinion of the court it would appear that whatever rights accrue to the stockholders under the facts set forth in the complaint would be derived from the corporation which suffers the primary damage for the issuance of stock at less than its true value (Selman v. Allen, 121 N. Y. S. 2d 142), the determination of the nature of the action is at this time unnecessary. If the complaint is sufficient on any theory it may not be dismissed under rule 106 of the Buies of Civil Practice. Plaintiff, who is suing on behalf of himself and all other stockholders of the corporation, has set forth all of the allegations necessary for a cause of action whether it be representative or derivative, including the fact, subjunctively phrased, that a demand on the officers and directors to bring the action in the name of the corporation, would be futile because the directors are participants in the wrong complained of. The sufficiency of this allegation has not been challenged, the defendant having expressly stated in the memorandum submitted that it is not contesting the conclusory form of the allegations of the complaint. The absence^ of the allegation usually found in a derivative action that it is brought for *1095 the benefit of the corporation does not render the complaint insufficient. The circumstance that plaintiff, though demanding damages for the benefit of the stockholders (while not alleging facts showing that damages have already been sustained by them) does not conclusively establish that the action is brought in the right of the stockholders. While the prayer for relief is of value in appraising the nature of an action, it forms no part of the pleading which stands or falls on its factual allegations. (City of Syracuse v. Hogan, 234 N. Y. 457, 461; Bloom v. Gelb, 227 App. Div. 619; Port v. Holzinger, 212 App. Div. 124.) From the facts alleged the court may infer that the corporation will suffer irreparable harm. The prayer for an injunction and for nullification of the reorganization agreement, on the other hand, relates to remedies equally available whether the action be derivative or representative.
If plaintiff establishes his allegations upon trial it would appear that a judgment may be entered restraining Glen Alden and its directors from consummating the transaction and from issuing the 3,621,703 shares for the net worth of $33,149,267 of List Industries. On this motion it must be assumed as true that the complaint establishes that Glen Alden has a capital and surplus totaling $68,000,000 according to its books, against which there are only 1,748,633 shares outstanding, whereas the List stockholders, in exchange for a book net worth of $33,149,267 are to receive 3,621,703 shares. Under these circumstances, and upon the showing of the interlocking directorates and the possibility of domination and the charge of conspiracy, fraud and bad faith, a cause of action has been set forth. While the question of the sale of unissued stock is strictly a 'matter of business judgment resting exclusively in the board of directors, with which the court will not normally interfere, it is subject to the limitation that their action may not be contrary to the true interests of the corporation. (Cf. Gamble v. Queens County Water Co., 123 N. Y. 91, 98.) But whether the action to restrain the issuance of shares for a palpably inadequate consideration is derivative in the right of the corporation, as held in Selman v. Allen (121 N. Y. S. 2d 142, supra) and Bowman v. Alaska Airlines (14 F. R. D. 70), or representative in the right of the stockholder (as determined in Horwitz v. Balaban, 112 F. Supp. 99; Shield v. McCutcheon, 14 F. R. D. 41) need not be decided at this time since the complaint, though inartistically drawn, is sufficient to warrant judicial intervention to determine the good faith of the directors of Glen Alden as fiduciaries of that corporation in issuing the shares in exchange for the assets to *1096 be received because of the obvious disparity as reflected by book values.
Accordingly, the motion to dismiss under rule 106 is denied.
Motion by List and Glen Alden requesting the court to dismiss on the ground that the trial of the action will involve the internal affairs of two foreign corporations:
The motion insofar as it affects List Industries can be summarily disposed of. There is no attempt by plaintiff to interfere with the internal affairs or management of that corporation. He is only concerned with those of Glen Alden. However, since a judgment in favor of plaintiff might result in the nullification of the reorganization agreement between List and Glen Alden, the former is an indispensable party (Civ. Prac. Act, § 193).
In support of the motion Glen Alden cites the case of Langfelder v. Universal Labs. (293 1ST. Y. 200), where the Court of Appeals approved the refusal of the courts of this State to fake jurisdiction of an action for declaratory judgment of rights of stockholders after the merger of a Delaware corporation with its subsidiary, which was also a Delaware corporation. In its opinion the court stated (p. 204): “ There are cases in which our courts will entertain jurisdiction in suits against foreign corporations where suitors, even stockholders, are entitled to some relief which the State court is competent to grant. But it is well settled that jurisdiction in any case will be declined either in the absence of jurisdiction in the strict sense or where a determination of the rights of litigants involves regulation and management of the internal affairs of the corporation dependent upon the laws of the foreign State or where the court in which jurisdiction is sought is unable to enforce a decree if made or where the relief sought may be more appropriately adjudicated in the courts of the State or country to which the corporation owes its existence (Fletcher, Cyclopedia of the Law of Private Corporations, vol. 17, §§ 8426-8429; Bickart v. Kelly-Springfield Tire Co., 243 App. Div. 72; Travis v. Knox Terpezone Co., 215 N. Y. 259; Cohn v. Mishhoff Costello Co., 256 N. Y. 102; Sternfeld v. Toxaway Tanning Co., 290 N. Y. 294; Nothiger v. Gorroon & Reynolds Corp., 293 N. Y. 682; Cohen v. American Window Glass Co., 126 F. 2d 111).”
In concluding that the courts below were justified in declining jurisdiction, the court pointed out that the merger was an accomplished fact, that an action had been brought in Delaware for an injunction to restrain the merger and that plaintiffs were seeking as damages the amount of depreciation and value of the stock and to restrain the operation of the agreement until the damages were determined. The Court of Appeals observed
*1097 (pp. 205-206): “It is not a simple contract on which they sue in which the rights and obligations of the parties are plainly written into -the contract a violation of which constitutes a breach giving rise to recovery of a money judgment in a court of law. The laws of the State of Delaware where Vadsco was incorporated as affecting the validity, construction and performance of the contract when made and the laws of that State applicable to the enforcement of the contract and the remedy for its breach, providing no substantial right secured by the contract is by the latter impaired, form a part of it with the same force and effect as though they were expressly referred to or incorporated in its terms (Home Bldg. & L. Assn. v. Blaisdell, 290 U. S. 398; People ex rel. City of New York v. Nixon, 229 N. Y. 356, 360-361). Under the laws of that State, a merger is apparently authorized and given effect except under exceptional circumstances but, in any event, a nonassenting stockholder may refuse to accept the merger and obtain money for the value of his stock by proceeding according to the terms of the statute (Porges v. Vadsco Sales Corporation, supra). In the instant case, said causes of action on contract may not be resolved into a money judgment, if at all, except upon a review of the statutes and decisions of Delaware which, under the circumstances, would at least be unseemly and inappropriate for our courts to undertake (cf. Cohen v. American Window Glass Co., supra). Additionally, entertainment of jurisdiction by our courts would necessarily involve regulation -and management of the internal affairs of a corporation dependent upon the laws of the foreign State.”
The instant case is readily distinguishable. In the first instance, here the merger, though voted by the majority of the stockholders, has not been effectuated and plaintiff seeks to restrain it from coming into being. While this court has been advised that an action has been brought in Pennsylvania against Grlen Alder, the domicile of that corporation, the precise nature thereof is not clear. It appears to involve an application by a dissenting stockholder for an injunction pending determination of the issue as to whether he has pre-emptive rights or rights to an appraisal despite the statement appearing in the proxy statement that dissenters had no such rights. Apparently that action involves exclusively the rights of a plaintiff as a stockholder and is not an action to restrain waste by the directors, which as defendants contend is in the right of the corporation for the benefit of all of the stockholders.
Nor is Koster v. Shenandoah Corp. (258 App. Div. 1079) conclusive. There the Appellate Division, Second Department, held: “ Although the appellant emphasizes the fact that part *1098 of the relief sought is for an accounting by the individual defendants accused of wrongful acts and restoration of the assets, to the extent to which they were undervalued, so as to be made available to the stockholders, such relief would constitute a virtual setting’ aside of the consolidation overwhelmingly voted for by the stockholders of the corporation in which plaintiff held stock and effected in accordance with the laws of the State of Delaware, under which laws the four corporations which were consolidated had been created. In addition, the relief would require a minute scrutiny of each of the four Delaware corporations involved to determine the correctness of the proportionate value assigned in the consolidation agreement. The plaintiff’s holdings were not large, and she declined a remedy provided by the laws of Delaware to dispose of such holdings at an appraised value. Whether or not that remedy is exclusive may be determined by the courts of Delaware. Under all the circumstances, we are of opinion that, in the exercise of sound discretion, jurisdiction of this action should be declined.”
In the instant case, as pointed out, the merger has not been voted and if the defendants are correct in their proxy statement, plaintiff has no right of appraisal.
The case of Sternfeld v. Toxaway Tanning Co. (290 N. Y. 294), cited by defendants is readily distinguishable. There some of the necessary parties had not been served with process or had not appeared while in the instant case, the court has been informed, all indispensable parties were served or have appeared. In Sternfeld the relief sought was the cancellation of recapitalization proceeding’s taken under the laws of North Carolina and a direction to stockholders to return stock issued thereunder to the corporation for cancellation. The Court of Appeals there held that the New York courts should decline jurisdiction because a judgment granting such relief could not be effectual. In the instant case since the principal parties are before the court if an injunction decree issues it will be readily enforcible.
The doctrine of forum non conveniens “is to be applied with caution ” (21 C. J. S., Courts, § 77, p. 115), particularly where the plaintiff is a resident of the State. There are impelling reasons why the court should retain jurisdiction of the present action. Both corporations are engaged in business in New York. They and many of the individual defendants are presently before the court. Many of the individual defendants are residents of this State. It does not appear that jurisdiction may be obtained in Pennsylvania of List Industries or that Glen Alden is amenable to process in Delaware; nor does it appear which of the directors of the respective corporations may be served *1099 in Pennsylvania. Under the circumstances it would he unfair to plaintiff to decline jurisdiction. As was stated in Royal China v. Regal China Corp. (304 N. Y. 309, 313): “ it would, under the circumstances here present, be unfair and unjust to close our courts to plaintiff and to relegate it to a forum wherein defendant cannot be served with process.” (See, also, Bata v. Bata, 304 N. Y. 51.) Since the court retained jurisdiction in these cases of nonresident plaintiffs (and in the Bata case, supra, where the defendant was a nonresident), because of the inability of the plaintiff to acquire jurisdiction since there was no one “ appropriate ” forum (Bata v. Bata, supra, p. 57) a fortiori, such reasoning applies to a resident plaintiff. Accordingly, the motions of the defendants are denied.
Plaintiff’s motions for an injunction and receiver: As heretofore shown, the book value of Glen Alden may be computed at approximately $36.30 a share while that of List at approximately $8 a share. The proposal of giving five shares of Glen Alden ($181.50) for six shares of List (about $48) evinces such a disparity of values as to call upon a court of equity to intervene and inquire into the bona fides of the transaction. In opposition to the motion, defendants have submitted the affidavit of an independent engineer who surveyed the assets of both corporations and who gives as his opinion that the exchange outlined is fair; that book values do not represent a fair basis for the exchange of securities and adverts to the fact that in the open market on the exchanges the average ratio of values of Glen Alden to List was $1.194 to 1.0. Plaintiff disputes the independence and accuracy of the appraisers.
The appraisals were made on the basis of going concern values. No consideration was given to liquidation values. For aught that appears it may well be that on a liquidation basis the net worth of Glen Alden would approximate its book value. In any event, the issues of values and the bona fides of the conduct of the directors should be fully developed at a trial. In the interim the status quo should be preserved. Accordingly, the motion for an injunction pendente lite is granted upon condition that plaintiff file an undertaking in the sum of $2,500 within five days after the entry of this order, in which event the case is to be set down on the calendar of Special Term, Part III for June 16,1958 for trial on that date, subject to the approval of the Justice presiding; otherwise the motion is denied.
No basis has been established to warrant the appointment of a receiver. Accordingly this motion is denied. Settle orders on notice.